IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Criminal Action No. **3:11-CR-0298-L** |
| | § | |
| **OKEY F. NWAGBARA,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant Okey Nwagbara[']s] Motion to Revoke or Amend Detention Order, filed November 15, 2011 (doc. 33); Defendant Okey Nwagbara[']s] [Corrected] Motion to Revoke or Amend Detention Order, also filed November 15, 2011 (doc. 34); and Defendant Okey Nwagbara's Amended Motion to Revoke or Amend Detention Order, filed November 21, 2011, (doc. 35). Having reviewed the motions, response, reply, record, and applicable authorities, the court **denies** Defendant Okey Nwagbara[']s] Motion to Revoke or Amend Detention Order, Defendant Okey Nwagbara[']s] [Corrected] Motion to Revoke or Amend Detention Order, and Defendant Okey Nwagbara's Amended Motion to Revoke or Amend Detention Order.

**I.    Factual and Procedural Background**

On October 12, 2011, Defendant Okey Nwagbara ("Defendant" or "Nwagbara") was charged in a seven-count Indictment with Conspiracy to Commit Health Care Fraud (count one) and Health Care Fraud (counts two through seven), in violation of 18 U.S.C. §§ 1347 and 1349. The United States of America ("United States" or "Government") filed its Motion for Detention on October 14, 2011, requesting the pretrial detention of Defendant because of a serious risk that he would flee.

The Government's motion presented a checklist of reasons for detention. The Government checked the space to indicate that detention was necessary to ensure Defendant's appearance as required but did not check the space to indicate that detention was necessary to ensure the safety of any other person or the community. After a detention hearing, held on October 19, 2011, Magistrate Judge Paul Stickney entered an order on November 2, 2011, granting the motion for detention and determining "there is no condition or combination of conditions of release which could be set which would reasonably assure Mr. Nwagbara's appearance at future court hearings." (doc. 29). The magistrate judge ordered pretrial detention because he determined, after hearing evidence from the Government and Defendant, that Defendant was a flight risk based upon (1) the Government's investigation and intent to denaturalize Defendant because he allegedly obtained his naturalization by means of fraud, and (2) Defendant's ties to the country of Nigeria. (doc. 29).

Defendant requests that the court revoke or amend the order of detention entered against him by the magistrate judge. Defendant argues in his motion that, while he may be the target of an investigation in relation to denaturalization proceedings, he was not charged with an immigration violation. Defendant also argues that his ties to Nigeria are overstated, as he had to apply for a visa to be admitted into Nigeria and is not capable of flying into that county at his own convenience. Nwagbara further argues that his wife and two children are located in the Dallas area. The Government contends that Nwagbara's history of deception and the intricacy of his fraud schemes demonstrate that he is a flight risk. Further, the Government contends that Nwagbara's arguments are moot, as he has now been formally charged in a Criminal Complaint for violation of 18 U.S.C. § 1425(b), alleging that he procured naturalization and citizenship to which he was not entitled. Nwagbara replies that evidence about unlawfully procuring citizenship should not have been

**Memorandum Opinion and Order – Page 2**

permitted at his detention hearing, as the hearing related to his charges for health care fraud, and the detention hearing on the naturalization case would be the proper venue to address such evidence.

**II.     Legal Standard**

"When the district court, pursuant to 18 U.S.C. § 3145(b), acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release." *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985) (citations omitted). "Under the Bail Reform Act, a defendant shall be released pending trial unless a judicial officer determines that release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). "[T]he lack of reasonable assurance of *either* the defendant's appearance or the safety of others or the community is sufficient; both are not required." *Fortna*, 769 F.2d at 249 (citations omitted) (emphasis in original). "[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required," a court must consider: "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). In ascertaining whether risk of flight warrants detention, a preponderance of the evidence standard is used, and "the judicial officer should determine, from the information before him, that it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance." *Fortna*, 769 F.2d at 250 (citation omitted).

**III.    Analysis**

The court now turns to the section 3142(g) analysis. With respect to the first section 3142(g) factor, the "nature and circumstances of the offense charged," Defendant is charged with one count of Conspiracy to Commit Health Care Fraud and seven counts of Health Care Fraud. Pursuant to 18 U.S.C. §§ 1347 and 1349, Defendant's alleged violations carry a maximum sentence of imprisonment of ten years for each count. Thus, if convicted, Defendant faces a lengthy prison sentence, which presents a motive to flee. This factor weighs in favor of detention. *See United States v. Stanford*, 630 F. Supp. 2d 751, 755 (S.D. Tex. 2009) (finding that the severity of the defendant's potential term of imprisonment of up to 375 months weighed in favor of detention).

With respect to the second section 3142(g) factor, "the weight of the evidence against the person," it is unclear from the record and the transcript of the detention hearing what evidence the Government has against Defendant with respect to his health care fraud charges. The entirety of the detention proceeding focused on Nwagbara's immigration violations. The Government has not shown that the weight of the evidence is against Nwagbara with respect to his alleged health care fraud violations. Defendant has also not argued that there is a deficiency of evidence against him. Thus, the court cannot say whether the evidence against Defendant weighs in favor of his detention. Courts, however, have found this factor to be of least importance in the detention determination. *Stanford*, 630 F. Supp. 2d at 755 (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *United States v. Barnett*, 986 F. Supp. 385, 393 (W.D. La. 1997)). Accordingly, the court will determine whether the evidence in support of the factors of greater importance will carry the day.

The third section 3142(g) factor, "the history and characteristics of the person," tips the scales in favor of detention. In considering this factor, a court looks to available information regarding "the

person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).[1]

The court considers Defendant's character and past conduct in tandem. The Government produced evidence that Defendant's history is riddled with deceit and fraudulent conduct. Fraud Detection Officer, Alma Montellano, from the United States Citizenship and Immigration Services Department ("CIS") testified that she is familiar with the A-File[2] in Nwagbara's case. According to Montellano, Defendant arrived in the United States married to his current wife, Gloria Nwagbara. He divorced Gloria two months after his arrival and married Stephanie McDowell, a Georgia native. Montellano testified that McDowell immediately petitioned on Nwagbara's behalf for an immigrant visa and that Nwagbara later applied for legal permanent residency status and then citizenship status. While this was taking place, he fabricated paperwork to demonstrate that he lived with McDowell in Georgia, when he actually lived in Dallas separate and apart from McDowell. Nwagbara discounts the evidence presented by the Government, explaining that much of it relies upon the untrustworthy testimony of McDowell, who provided inconsistent explanations to CIS regarding her relationship with Nwagbara. The Government, however, bolsters its argument with documentary evidence. For example, Montellano testified that Nwagbara submitted in support of his application for citizenship a life insurance application, requesting to ensure his own life and naming McDowell

---

[1] Although Defendant objects to the magistrate judge's consideration of his alleged immigration violation, the court notes that it is a relevant consideration under 18 U.S.C. § 3142(g)(3)(A), which requires analysis of the defendant's criminal history and past conduct.

[2] An "A-file" is an official government record of an individual's immigration process. *See.* Hr'g Tr. 6, Oct. 19, 2011. (doc. 36).

**Memorandum Opinion and Order – Page 5**

as the beneficiary. The insurance documents were submitted by Nwagbara to CIS as evidence that he was in a legitimate marriage relationship with McDowell but were altered to reflect a Georgia address. A copy of the same documents provided by the life insurance company reflected a Dallas address for Nwagbara. Hr'g Tr. at 22-23. Defendant also falsely represented on a mortgage loan application that he was a United States citizen. Hr'g Tr. at 28-29. The court determines that this evidence demonstrates a history of dishonesty and a willingness to falsify documents, and such evidence weighs in favor of detention.

The Government has not adduced any evidence demonstrating that Nwagbara has a history of drug or alcohol abuse or other health issues. Defendant presented testimony from a close cousin that he is in good health, has no psychological problems, and has pursued a Master's degree in public administration. Hr'g Tr. at 48. These considerations weigh in favor of release.

With respect to his family ties, Nwagbara argues that his wife and two young children and cousin are in Dallas, he has a home in Dallas, and he has a brother with several children in Georgia. The existence of family ties, however, is not determinative. *See United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992) (holding the defendant's ties were not the sort of family ties from which the court could infer that a defendant is so deeply committed and personally attached that he cannot be driven from it by the threat of a long prison sentence). The Government presented evidence that Nwagbara has close relatives, a mother and six brothers, in Nigeria and has taken trips to visit them, demonstrating substantial family support for Defendant in his country of origin. Hr'g Tr. at 61-62. While Defendant's family ties in Texas and Georgia provide some evidence of an incentive to stay in the United States, the Court believes Defendant could be driven from such ties, as Defendant faces a lengthy prison sentence and also has strong family ties in Nigeria.

With respect to Defendant's employment, Defendant's counsel argued during the hearing that Nwagbara had a business and employment but later indicated that the business is now defunct because of the health care fraud investigation and the subsequent seizure of the assets. Hr'g Tr. at 61-62. Defendant presented testimony that his financial resources are modest because he owns cars that were purchased at auction, his business was closed down, and he has borrowed money from his cousin. Hr'g Tr. at 45-47. The Government explained that Nwagbara ran a business called Advance Medical Supplies, billed in excess of $1 million, was reimbursed nearly $1 million from Medicare, owned and operated the company, and maintained only one employee. The Government is unable to trace the money, as several checks from the company were written to Nwagbara and transferred to cash. While there is evidence that Defendant lived modestly, the court recognizes that a substantial amount of unaccounted-for funds would make it easier for Nwagbara to flee. Accordingly, the court determines that Defendant's purportedly modest financial resources are not strong evidence of a decreased flight risk.

The court next considers Defendant's criminal history. At the time of the detention hearing, the Government was pursuing an investigation into Defendant's alleged illegal procurement of citizenship. Since the hearing, Defendant has been formally charged in a Criminal Complaint for violation of 18 U.S.C. § 1425(b), alleging that he procured naturalization and citizenship to which he was not entitled. The Government presented testimony from nine-year immigration officer Montellano that a violation under section 1425 carries a penalty of jail time and deportation and that an individual facing the penalty of deportation is characteristically a flight risk. This court has previously found that an individual subject to deportation is a flight risk. *See United States v. Magallon-Toro*, 2002 WL 31757637, at *2 (N.D. Tex. Dec. 4, 2002) (holding Defendant posed a

**Memorandum Opinion and Order – Page 7**

flight risk because he was subject to immediate deportation by Immigration and Naturalization Services upon release from federal custody). This factor militates in favor of detention.

Neither party argues that the fourth section 3142(g) factor, "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," is applicable to Nwagbara. Accordingly, the court makes no determinations with respect to this factor.

The court determines that the Government has shown by a preponderance of the evidence that Defendant poses a flight risk. Defendant has the motive and likely has the means to flee.[3] The potential of a long sentence of imprisonment and deportation and Defendant's family ties in Nigeria weigh in favor of Defendant's detention, notwithstanding his family ties in Texas and absence of any history of drug or alcohol abuse. Further, the evidence shows Nwagbara has a demonstrated history of fabricating documents and deceit. In sum, the record as a whole supports Nwagbara's detention, and the court determines that it is more likely than not that there is no condition or combination of conditions of release that could be set that would reasonably assure the appearance of Defendant Nwagbara as required.

## IV.   Conclusion

For the reason herein stated, the court **denies** Defendant Okey Nwagbara['s] Motion to Revoke or Amend Detention Order (doc. 33); Defendant Okey Nwagbara['s] [Corrected] Motion to Revoke or Amend Detention Order (doc. 34); and Defendant Okey Nwagbara's Amended Motion to Revoke or Amend Detention Order (doc. 35). The court **denies** Defendant Okey Nwagbara's

---

[3] Defendant presents evidence that he had to apply for a visa in order to be admitted into Nigeria in 2009 and is not capable of flying into that country at his own convenience. (doc. 34-1). The Government, however, asserts Nwagbara's A-file shows a Nigerian passport and that there is no record of the passport being turned over to immigration authorities or that Nwagbara renounced Nigerian citizenship after naturalization in the United States. The court determines that there are no assurances that Nwagbara lacks the ability to enter into Nigeria at his own convenience.

**Memorandum Opinion and Order – Page 8**

request in his Amended Motion to Revoke or Amend Detention Order for a second detention hearing.[4]

**It is so ordered** this 19th day of December, 2011.

_____
Sam A. Lindsay
United States District Judge

---

[4] In his Amended Motion to Revoke or Amend Detention Order, Defendant requests, in the alternative, that the court order a second detention hearing during which his former wife would be ordered to appear and testify. Upon reviewing the record, the court determines a second hearing is unnecessary to rule on the motions.

**Memorandum Opinion and Order – Page 9**